UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 20 CR 585 |
| v. | |
| JACOB MATHLEY | Honorable Jorge L. Alonso |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

Defendant Jacob Mathley was a prolific trader of child pornography on the dark net, where he amassed a collection of thousands of pictures and videos of young girls being sexually abused. In addition, defendant obtained and posted pictures of two minors from his community, and repeatedly told his "pedo friends" on the dark net that he wanted to rape them. He also bragged about stealing panties from one of those girls, and agents recovered a collection of ziplocked girls' panties in defendant's home. Defendant is a danger on the internet and a danger in his community. The government recommends a sentence within the guidelines range of 210 to 262 months' imprisonment.

**I.    BACKGROUND AND OFFENSE CONDUCT**

The background is taken from the Presentence Investigation Report (PSR), which includes the Government's Version of the Offense (GVO), and defendant's plea agreement (PA).

**A.    Personal Background**

Defendant was born in Pendleton, Indiana. (PSR ¶ 61.) His parents divorced when he was a freshman in high school. (PSR ¶ 64.) Defendant was expelled from

high school during his senior year, but later earned his GED. (PSR ¶ 99-100.) Defendant entered the Air Force in 1999 and worked on aircraft fuel systems. (PSR ¶ 108.) He was honorably discharged in 2002. *Id.*

While he was in the military, he had a son during a relationship that did not last. He later had custody of that son between the ages of 8 and 18, but the son relocated to Indiana as an adult. PSR ¶ 66. Defendant married his current wife in 2005 and has two children with her, who are both teenagers. PSR ¶ 65.

Defendant was self-employed in the snow plowing business between 2012 and 2020. PSR ¶ 107. He worked at Elementary School A performing facilities and maintenance work between 2017 and his arrest in 2020. PSR ¶ 104. According to the PSR, he currently has a negative net worth and does not have the ability to pay a fine in addition to restitution. PSR ¶ 114

### B. Offense Conduct

In 2019 and 2020, defendant accessed thousands of images of child pornography on the dark net, and shared child pornography with other dark net users.[1] PSR ¶ 16. By the time his laptop was seized in September of 2020, defendant had approximately 12,610 images of child pornography and 476 video files. PSR ¶ 17.

On the day he was arrested, defendant was on the dark net using the name "Slamdime," which is an alias he used across multiple sites. On September 2, 2020,

---

[1] The dark net or "dark web," which is primarily the "Tor network," is designed specifically to facilitate anonymous communication over the Internet. To access the Tor network, a user must install Tor software from the internet. The Tor software bounces a user's communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual IP address, which could otherwise be used to identify a user.

defendant posted "hi all my pedo friends" on two different dark net sites where child pornography is traded. Those sites are referred to in his plea agreement as Websites E and F. On Website E, defendant shared an image depicting a girl less than twelve years old who was fully nude, with her legs spread open and her hands on either side of genitals, spreading them open. On Website F, defendant posted a girl less than twelve years old lifting her skirt around her waist and displaying her genitals, and commented "best way for a girl to wear a skirt hehe." PA at 4.

During his time on the dark net, defendant possessed images portraying prepubescent children engaged in sadistic and masochistic conduct, including videos. On July 27, 2020, for instance, defendant posted a link to a "gif" video that depicted an adult female wearing a sex toy, slapping the buttocks of a child, and inserting the sex toy in the child's vagina or anus. PA at 4-5; GVO Ex. 1 at 2. Defendant captioned his post "my current gf mom caught us and she joined us and she let daughter fuck her with a starp [sic] on why [sic] I fuck mom it so hot." GVO Ex. 1 at 2.

Defendant also fantasized about girls that he knew in real life, who are referred to as Minor Female Victims 1 and 2 (MFV-1 and MFV-2.) MFV-1 was 13 years old at the time of defendant's arrest, was around the same age as defendant's daughter, and attended Elementary School A while defendant worked there. GVO Ex. 2. Defendant obtained digital photos of MFV-1, including pictures of her in sports attire and swimwear, and posted them on the dark net with captions including the following:

- "god i want to rape this girl"

3

- "god i need to rape this whore"

- "i would love to tap that pussy"

- "god i need to fuck this girl"

- "want to rape her so bad"

- "want to rape the little slut"

According to MFV-1's mother, at the time of his arrest defendant had recently offered to take MFV-1 to Six Flags America as part of group outing. GVO Ex. 2 at 1.

During the years leading up to his arrest, defendant got to know a family through sports programs, and sometimes did work around their house. The family had a teenage daughter, MFV-2. About one or two years before his arrest, defendant did handyman type work for the family and surreptitiously took photos of MFV-2, who would have been around 15 years old at the time. GVO Exs. 3, 6. Defendant also collected pictures of MFV-2 from sports events and wrote comments about her when he posted her photos, such as:

- "god i want this 13yo so bad"

- "i want to fuck and preg this girl"

- "i steal her panties"

- "want to rape this girl"

- "she is comeing [sic] to babysit for me, i already still [steal] her panties

- "stole this 13yo panties"

- "need to steal more of her panties"

- "i miss my girl i steal panties from she need to get back soon :("

4

GVO Ex. 5. When searching defendant's devices, agents found a series of photos of MFV-2 in her bedroom. GVO Ex. 6. According to MFV-2's parents, defendant took these photos of MFV-2 and her bedroom when he was installing shelves. GVO Ex. 3 at 2. Two of those photos were of MFV-2's underwear drawer in her dresser. GVO Ex. 6 at 4. During the search of his house, defendant admitted to agents that he had a panty fetish. Agents found girl's panties in individual zip-lock baggies in defendant's bedroom closet. GVO Ex. 9.

The parents of MFV-1 and MFV-2 both believed that defendant never had the opportunity to commit a hands-on offense with either minor because he was never alone with either of them. The father of MFV-1, and the mother and brother of MFV-2, have submitted victim impact statements, which the government will tender as a supplement to the PSR.

Finally, defendant also talked about getting a girl in Mexico on the dark net. On October 26, 2016, on another chat site, user Slamdime17, believed to be defendant, posted "does any one know if it is easy to get a young girl in mexico??" Defendant followed up the next year with the following posts:

March 5, 2017: "Going to Mexico does anyone know if it easy to find girls there?"

March 6, 2017: "any one been to mexico and got a young girl"

March 7, 2017: "any one ever get a girl in mexico? i want to know if it is easy"

March 21, 2017, "anyone been to mexico and got girl?? i am thinking about going there since the are leagl at 12."

March 28, 2017: "anyone been to mexico and had luck finding a girl??"

April 3, 2017: "any one have any experince in mexico getting a girl for the night"

June 27, 2017: "any one have luck getting a girl in mexico?"

July 13, 2017: "does any one know how easy it to get a girl in Mexico"

Defendant travelled to Mexico between July 16, 2017 and July 23, 2017. On November 17, 2017, defendant responded "mexico has some state are that low" in response to a chat about the age of consent in various locations. Ex. 4 at 3. In his interview, Mathley denied having any hands-on contact with any minors, including in Mexico.

## II.     SENTENCING RECOMMENDATION

The government recommends a sentence within the guidelines range of 210 to 262 months imprisonment. As discussed below, each component of the guidelines calculation appropriately reflects the seriousness of the offense. In addition, this case involves significant aggravating factors that are not accounted for in the guidelines calculation—namely defendant's expressed interest in sexual contact with minors in his community, and the fact that he took steps to invade their privacy and spread their photos on the dark net.

### A.     The Guidelines Properly Reflect the Severity of the Offense.

This is not a case where the advisory guidelines range overstates the severity of the offense. Each enhancement addresses a distinct aspect of the harm defendant caused and the danger he poses.

The base offense level of 22 accounts for the fact that defendant was convicted of distribution of child pornography, rather than mere possession. (PSR ¶ 30.)

Defendant's distribution of child pornography on the dark net, along with his comments encouraging his "pedo friends" to view them, emboldened a community of pedophiles who perpetuate child sexual abuse. Defendant's dark net community requires participants to share child pornography as consideration for accessing it, leading to massive and widespread distribution, which is why a five-point enhancement for distribution of child pornography in exchange for "any valuable consideration" is appropriate. PSR ¶ 32. Defendant regularly used the name "Slamdime" on the dark web in order to establish his identity as a trader. The number of images found on his devices—well over 10,000—show that he was a prolific trader of child pornography. A five-level enhancement based on the number of images, well over the 600 image threshold, is appropriate. PSR ¶ 35. By bolstering the demand for child pornography and helping to "normalize" it, defendant was creating further victims of child sexual abuse.

Defendant also receives a two-point enhancement for trading images of girls less than 12 years old. PSR ¶ 31. As defendant's pattern of activity makes clear, he was sexually attracted to pre-pubescent girls. These children are extremely vulnerable to exploitation, because they are often abused by a trusted caregiver and too afraid and manipulated to speak out.

Defendant also receives a four-point enhancement for possessing and trading images of girls involved in sadistic and masochistic conduct. PSR ¶ 33. Defendant did not possess these images by accident. In the example set forth in the plea agreement, defendant shared a gif video of a girl being penetrated by a sex toy and slapped in the

buttocks. When he shared this, he commented about his fantasy of being "caught" having sex with a young girl by her mother, who then joins in with a strap-on sex toy.

Finally, defendant receives a two-point enhancement for using a computer in furtherance of the offense. PSR ¶ 34. Although almost all child pornography offenses now involve the use of the computer, this enhancement is particularly appropriate in this case because defendant used the dark net. Because of the way the dark net routes communications through other computers, traditional IP identification techniques are not viable.[2] A criminal suspect's use of the dark net makes it extremely difficult for law enforcement agents to detect the users' actual IP addresses or physical locations. As a result, the dark net is place where child pornography victim images are spread all over the world in high volume.

Defendant was in possession of numerous images of identifiable child pornography victims who have submitted victim impact statements along with their claims for restitution. The continued spread of their images on the internet, and particularly the dark net, causes them enormous suffering. They know that pedophiles such as the defendant are using their child abuse for gratification and may even recognize them in public. The continuing harm caused by defendant's internet activity, including his encouragement of other pedophiles, cannot be overstated.

---

[2] When a user on the Tor network accesses a website, for example, the IP address of a Tor "exit node," rather than the user's actual IP address, shows up in the website's IP log. An exit node is the last computer through which a user's communications were routed. There is no practical way to trace the user's actual IP address back through that Tor exit node IP address.

### B.      Defendant's Non-Internet Aggravating Conduct

Defendant also engaged in significant aggravating conduct that is not reflected in the guidelines' calculation. Defendant victimized MFV-1 and MFV-2 by invading their privacy and spreading their photos on the dark net, making them sexual objects to his community of pedophiles. Defendant's repeated statements about wanting to rape them have to be taken seriously when weighing his risk of recidivism. Although defendant told agents that all his activity was fantasy, he *did* take action in the real world to prey on both girls. In particular, when MFV-2's family trusted defendant to do work in their home, defendant betrayed their trust. He took pictures of MFV-2, apparently stole her panties, and then bragged about it on the dark net while spreading MFV-2's photos. Defendant likewise spread MFV-1's photos on the dark net when she was just 13. Defendant's statements about raping a girl he knew in his community had an impact, even if he did not touch her. He encouraged other pedophiles to act on these dangerous desires with minors they knew. Likewise, defendant's statements about getting a young girl in Mexico indicate that he engaged in some planning that appears to show he genuinely contemplated abusing a child, even if he never did.[3]

These aggravating facts should all be considered under 18 U.S.C. § 3553(a), and are good reason not to go below defendant's advisory guidelines range. Rather,

---

[3] Additional information regarding defendant's knowledge of sexual abuse perpetrated by someone else is set forth in the government's version of the offense. GVO at 4, Ex. 7. Defendant's knowledge of this abuse did not stop him from continuing to engage in the offense and this aggravating conduct.

they should be considered in determining where defendant should be sentenced within that range.

### C. Defendant's Mitigating Circumstances Does Not Justify a Below-Guidelines Sentence

In mitigation, defendant admitted to the essential elements of the crime immediately when confronted by law enforcement. In addition, he promptly agreed to plead guilty to a superseding information that included both his possession and distribution of child pornography.[4] Defendant insisted that he never actually touched a minor, and that he has been a good father. As he points out in his sentencing memo, he has otherwise generally led a law-abiding life. But again, even if defendant did not do anything aside from what is described above, he appears to have come dangerously close to a hands-on offense. Although defendant's mitigating circumstances should be considered when fashioning a sentence within the guidelines range, they do not support a below-guidelines sentence.

### III.  Restitution and Supervised Release

The government, defendant, and counsel for the victims are still negotiating restitution for the victims and may ask for up to 90 days additional time to either reach agreed amounts or request a hearing on restitution. The government has received requests for restitution from over 25 victims, the last of which was received on July 13, 2022. Although agreed amounts have been reached with many, the

---

[4] Although defendant was charged in September 2020 and pled guilty in March of 2022, the delay in reaching a finalized plea agreement should not be held against him. Defendant was willing to plead guilty to a superseding information early on in the case, but it took longer than usual for the government to tender a final approved plea agreement.

government will need additional time to coordinate between victims' counsel and defense counsel.

The government agrees with United States Probation regarding the five-year term of supervised release and recommended conditions. Because of defendant's offense conduct, his history with minors he knew in person, and previous pretrial release violation, Discretionary Condition 23 (allowing probation searches based on reasonable suspicion), and Special Condition 9 (providing for sex offender treatment) are particularly appropriate.

## IV.  CONCLUSION

For these reasons, the government respectfully requests a sentence within the guidelines range of 210 to 262 months' imprisonment.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    /s/ Charles W. Mulaney
       CHARLES W. MULANEY
       Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
Dated:  July 15, 2022         (312) 469-6042